Arnold L. Graff (SBN 269170)
agraff@ aldridgepite.com
Joseph C. Delmotte (SBN 259460)
jcdelmotte@ aldridgepite.com
**ALDRIDGE PITE, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile:  (619) 590-1385

Attorneys for Movant
Wells Fargo Bank, N.A.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>JAMES A. SINGH,<br><br>Debtor. | Case No. 15-40917-WJL<br><br>Chapter 13<br><br>**OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**<br><br>CONFIRMATION HEARING:<br>DATE:     June 11, 2015<br>TIME:     1:30 PM<br>CTRM:    220 |

Wells Fargo Bank, N.A.[1] (hereinafter "Creditor"), secured creditor of the above-entitled debtor, James A. Singh (hereinafter "Debtor"), hereby objects to the Chapter 13 Plan filed by Debtor in the above-referenced matter.

## I. STATEMENT OF FACTS

1.  Creditor's claim is evidenced by a promissory note executed by Debtor and dated January 20, 2006, in the original principal sum of $500,000.00 (the "Note"). A copy of the Note is attached hereto as **Exhibit A** and incorporated herein by reference.

---

[1] This Objection to Confirmation of Chapter 13 Plan shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004, notwithstanding Aldridge Pite, LLP's participation in this proceeding. Moreover, the within party does not authorize Aldridge Pite, LLP, either expressly or impliedly through Aldridge Pite, LLP's participation in this proceeding, to act as its agent for purposes of service under Fed. R. Bankr. P. 7004.

2. The Note is secured by a deed of trust (the "Deed of Trust[2]") encumbering the real property commonly known as 21 Pembroke Ct, Oakland, California 94619-2413 (the "Subject Property"). A copy of the Deed of Trust is attached hereto as **Exhibit B** and incorporated herein by reference.

3. On or about December 31, 2007, WSB's charter and bylaws were amended to change its name to Wachovia Mortgage, FSB ("Wachovia"). A copy of the Office of Thrift and Supervision's approval letter evidencing the name change is attached hereto as **Exhibit C**. On or about November 1, 2009, Wachovia converted to a national bank with the name Wells Fargo Bank Southwest National Association ("WFBSW"). On the same date, WFBSW merged with and into Wells Fargo Bank, National Association. A copy of the Official Certification of the Comptroller of the Currency evidencing the conversion and merger is attached hereto as **Exhibit D**.

4. On March 23, 2015, Debtor filed the instant Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of California, Oakland Division, and was assigned case number 15-40917-WJL.

5. Debtor's Chapter 13 Plan (the "Plan") provides for monthly payments to the Trustee in the total amount of $855.46, for sixty (60) months. However, the Plan does not provide for the cure of Creditor's pre-petition arrears, but rather seemingly proposes to cram down Creditor's claim to a secured amount of $40,000.00 to be paid at an interest rate of 0.00%.

6. Debtor's bankruptcy petition lists the Subject Property as Debtor's principal residence, and the Subject Property is listed as Debtor's service address on PACER. The Subject property is also the only real property listed in Debtor's schedule D.

7. Creditor is still in the process of finalizing its proof of claim in this matter, but Creditor's total secured claim is in the estimated sum of $724,230.23, and its pre-petition arrears on said claim are in the sum of $220,423.84, including sixty-three (63) missed monthly mortgage payments.

/./././

/./././

---

[2] The Note and Deed of Trust are collectively referred to herein as the "Subject Loan."

8. On or about November 15, 2013, Creditor obtained online valuation reports ("Valuation Report") from Eppraisal.com and Zillow.com that values the Subject Property at $579,714.00 and $671,710.00, respectively. A copy of the Valuation Report is attached hereto as **Exhibit E**. Debtor's own schedules even lists the Property's value at $600,000.00.

Creditor now objects to confirmation of Debtor's chapter 13 plan.

## II.

## ARGUMENT

**A. DEBTOR'S PLAN SEEMINGLY PROPOSES TO MODIFY THE RIGHT OF A CLAIM SECURED ONLY BY DEBTOR'S PRINCIPAL RESIDENCE**
11 U.S.C. § 506(a)

11 U.S.C. §1322(b)(2) provides that a plan may modify the rights of holders of secured claims, other than a claim secured only be a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 506(a) provides that an allowed claim of a creditor secured by a lien on property in which the estate has an interest…is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.

Debtor's Plan seemingly seeks to reduce Creditor's allowed claim to a secured value of $40,000.00. However, Debtor is prohibited from modifying Creditor's claim because Creditor is informed and believes that the Subject Property is Debtor's principal residence. Debtor's bankruptcy petition lists the Subject Property as Debtor's principal residence, and the Subject Property is also listed as Debtor's service address on PACER. The Subject property is also the only real property listed in Debtor's schedule D. Based upon the foregoing, Creditor requests that the Court deny Debtor's Plan.

**B. EVEN ASSUMING ARGUENDO THAT THE SUBJECT PROPERTY WERE NOT DEBTOR'S PRINCIPAL RESIDENCE, DEBTOR HAS FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUBSTANTIATE THE VALUATION OF CREDITOR'S CLAIM**
11 U.S.C. § 506(a); 11 U.S.C. §1322(b)(2)

11 U.S.C. §1322(b)(2) provides that a plan may modify the rights of holders of secured claims, other than a claim secured only be a security interest in real property that is the debtor's

principal residence. 11 U.S.C. § 506(a) provides that an allowed claim of a creditor secured by a lien on property in which the estate has an interest…is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.

Debtor's Plan seemingly seeks to reduce Creditor's secured claim to a secured value of $40,000.00. However, Debtor has failed to file any evidence such as a recent broker's price opinion or appraisal report to substantiate her valuation. Moreover, Creditor has reason to believe that the true value of the Subject Property is significantly greater than Debtor's valuation. In particular, Creditor obtained online valuation reports ("Valuation Report") from Eppraisal.com and Zillow.com that values the Subject Property at $579,714.00 and $671,710.00, respectively. A copy of the Valuation Report is attached hereto as **Exhibit E**. Debtor's own schedules even lists the Property's value at $600,000.00. As the value of the Subject Property is a factual issue that will likely require the admission of expert testimony, Creditor requests that should the Court determine that the Subject Property is not the Debtor's principal residence, that this matter be continued so Creditor can obtain a verified appraisal of the Subject Property. Moreover, Creditor requests the cooperation of Debtor in permitting it to obtain a verified appraisal of the Subject Property as it will require access to the Subject Property to conduct an interior inspection. Based upon the foregoing, Creditor requests that the Court deny confirmation of Debtor's Plan or, alternatively, continue the matter to allow Creditor time to obtain a verified appraisal of the Subject Property.

**C. EVEN ASSUMING ARGUENDO THAT THE SUBJECT PROPERTY WERE NOT DEBTOR'S PRINCIPAL RESIDENCE, DEBTOR'S PLAN STILL ATTEMPTS TO REDUCE THE INTEREST RATE PAID ON CREDITOR'S CLAIM WITHOUT IMPLEMENTING THE PRIME-PLUS FORMULA**

In the case of Till v. SCS Credit Corp., 541 U.S. 465, (2004), the Supreme Court adopted a two-part "prime-plus" formula for determining the proper interest rate a debtor should pay on a secured claim that complies with the "cram down" provisions of the Bankruptcy Code. The Supreme Court in Till stated that:

/./././
/././
/././

> "the approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt Debtor typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan." Id. at 478-479.

In discussing the "prime-plus" interest rate calculation, the Supreme Court went on to explain that in starting from a concededly *low* estimate and adjusting *upward*, the evidentiary burden is placed squarely on the creditors, who are likely to have readier access to any information absent from the Debtor' filing. Id. at 479.

In the present case, Debtor's Plan proposes an interest rate of 0.0% at which to pay off Creditor's reduced claim over the life of the Plan. However, Creditor maintains that if the appropriate "prime-plus" formula is used, as proscribed in the Till case, the calculated interest rate to be paid by Debtor will be significantly higher. In addition, Creditor recognizes that as required in the Till case, the burden of proof for establishing the higher interest rate falls on the creditor, and as a result, Creditor is prepared to offer expert testimony at an evidentiary hearing in order to establish the appropriate interest rate to be paid by the Debtor, if the parties are unable to agree to a resolution of the applicable interest rate on Creditor's secured claim. Accordingly, the court must deny confirmation of Debtor's Plan.

**D.　DOES NOT MEET FULL VALUE REQUIREMENT**
11 U.S.C. ' 1325(a)(5)(B)(ii).

The amount of arrearage in Debtor's Chapter 13 Plan is incorrect. The pre-petition arrears specified in the Chapter 13 Plan are $0.00, but Creditor's pre-petition arrearage is estimated to be in the sum of $220,423.84. As a result, the Plan fails to satisfy 11 U.S.C. ' 1325(a)(5)(B)(ii).

/././

/././

### E. **FEASIBILITY**
11 U.S.C. ' 1325(a)(6); 11 U.S.C. ' 1322(d).

Pursuant to Ninth Circuit precedent, when a "chapter 13 debtor proposes to reduce the monthly payments to [a] secured creditor, the loan *must be paid in full over the life of the plan* (which may not exceed five years)." In re Enewally, 368 F.3d 1165, 1171 (9th Cir. 2004). (emphasis added). Therefore, even assuming arguendo that the Subject Property were not Debtor's residence (and Creditor's claim were subject to being crammed down), Debtor would still be required to pay off Creditor's entire claim in full before the end of the plan because the current value of the Property most likely exceeds Creditor's total secured claim. Accordingly, because Debtor's Schedule J lists a monthly disposable income of just $2,319.00, Debtor lacks sufficient monthly disposable income with which to fund this Plan.

1. That confirmation of the Debtor's Chapter 13 Plan be denied;

2. That Debtor's case be dismissed;

3. Alternatively, that the Plan be amended to remove the cram down provision and to provide for the pre-petition arrears listed in Creditor's Proof of Claim to be paid within a period not to exceed sixty (60) months; and

4. For such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: June 1, 2015         ALDRIDGE PITE, LLP


By: /s/ *Arnold L. Graff*
ARNOLD L. GRAFF (SBN 269170)
Attorneys for Wells Fargo Bank, N.A.